IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| KARLA WESSELS | ) |
|         Plaintiff, | ) |
| v. | ) CASE NO. |
| MICHAEL CHAPMAN, M.D.<br>And MERCY MEDICAL CENTER, | ) Jury Demand |
|         Defendants. | ) |

## COMPLAINT

NOW COMES the Plaintiff, KARLA WESSELS, by and through her attorneys in this regard, Larry Helvey Law Firm, and Thomas M. Paris, and complaining of Defendants, MICHAEL CHAPMAN, M.D. ("Dr. Chapman") and MERCY MEDICAL CENTER, alleges and states as follows:

## PARTIES

1. Plaintiff, KARLA WESSELS, is a current resident of South Carolina, though a resident of the state of Illinois during the events in question.

2. Dr. Chapman is a resident of the state of Iowa licensed to practice in the state of Iowa.

3. Mercy Medical Center is a hospital located, incorporated and doing business in the state of Iowa, City of Dubuque, where Plaintiff was treated.

## JURISDICTION

4. The court has subject matter jurisdiction over this action as the action involves diverse citizenship. Venue is proper as the events at issue took place in Dubuque, Iowa, which is part of the United States District Court, Northern District of Iowa.

5. The amount in controversy exceeds $75,000.00.

## FACTUAL BACKGROUND

6. On July 27, 2012, Karla Wessels was on vacation from her full-time job as an American Airlines purser/flight attendant. She was 64 years old, traveled and toured the world through her job, resided in a high rise condominium along Chicago's lakefront, relied upon public transportation regularly engaged in recreational activities and was in every sense of the word an active woman in her 60s. In fact, at the time of the hip fracture which Dr. Chapman later repaired she was playing tennis with her brother in Dubuque, Iowa. This history was known to Dr. Chapman, or certainly could have been know through questioning, generally known in the medical field as taking a history.

7. Having sustained a fracture while playing tennis on July 27, 2012, Karla Wessels was transported by ambulance to Mercy Medical Center in Dubuque, Iowa, where she came under the care of Michael P. Chapman, M.D. in the emergency department at Mercy. On July 27, 2012 the Mercy Medical Center radiology department correctly diagnosed a displaced and angulated fracture of Plaintiff's right femoral neck.

8. Dr. Chapman, having had an opportunity to review the x-rays, take a history from Karla Wessels and her family, review the history which had been recorded by Mercy personnel, should have understood her active life.

9. Dr. Chapman agreed to accept Karla Wessels as a patient and treat her for her

2

injuries and in doing so had a duty to use that skill and care ordinarily used by reasonable qualified physicians treating patients in like or similar circumstances.

10. Confronted with the fracture which Karla Wessels presented, Dr. Chapman had different options regarding surgical interventions which could be used to resolve the fracture.

11. It then and there became Dr. Chapman's duty to inform the Plaintiff of the general nature of the procedures available, the risks involved, the prospects of success, the prognosis for each of those procedures in light of her history and the injury which presented.

12. The purpose behind informed consent, as it is known in both the medical and legal professions, is to afford the patient the ability to make an informed, intelligent decision regarding medical treatment she is to receive.

13. Dr. Chapman apparently understood the fact that different surgical and nonsurgical options were available and his duty to inform the patient of those as he stated within the records kept by Mercy Medical Center that treatment options were discussed.

14. Notwithstanding the statement, "treatment options were discussed", no differing options were presented to Plaintiff. Plaintiff's brother was present at all times during any "informed consent" session, and Plaintiff was not in such pain or under impairment due to medications that she, or he would have, or did, miss any discussion regarding options, and the risks and benefits of those options.

15. As a direct and proximate result of the failure to disclose to Karla Wessels the various surgical options she underwent at the hands of Dr. Chapman a bipolar hemiarthroplasty which was the only surgery which Dr. Chapman discussed with her prior to the surgery.

16. Though a total hip arthroplasty was available, not medically contraindicated, and very beneficial to an active woman in her 60's, the Plaintiff was never advised of the same by Dr.

3

Chapman.

17. Following Dr. Chapman's bipolar hemiarthroplasty the Plaintiff underwent a course of rehabilitation and physical therapy. Notwithstanding this painful course, Plaintiff remained extremely limited in her activities, and even then experiencing significant pain.

18. During the rehabilitation process, while still in Iowa, Plaintiff specifically discussed with Dr. Chapman whether she would ever return to working in her chosen field, as she had for decades. Dr. Chapman told her that she could not.

19. Given the statements by Dr. Chapman, the significant limitations and pain which Plaintiff was experiencing, because of surgery performed by Dr. Chapman which was not designed to accommodate a working active lifestyle, Plaintiff was forced to leave her employment as an American Airlines flight attendant/purser.

20. In October of 2012, the Plaintiff, still in significant pain, limitations, and restrictions in her activities of daily living, consulted with an orthopedic surgeon in Chicago regarding her ongoing problems. After x-rays, a course of physical therapy, and referrals, on March 27, 2013, Plaintiff underwent a removal/revision of her bipolar hemiarthroplasty into a right total hip arthroplasty. Almost immediately, but certainly soon after that procedure, Plaintiff has experienced significantly better mobility and far less pain. She has resumed some of her normal daily activities, though by virtue of her resignation cannot return to her prior employment.

21. Dr. Chapman's failure to explain to Karla Wessels the option and benefits of a total hip arthroplasty caused her to accept the only option he presented, the bipolar hemiarthroplasty. Had Dr. Chapman offered the total hip arthroplasty, and provided informed consent with respect to the same, Plaintiff would have consented to the procedure and received similar, perhaps even better, recovery then she did with the eventual total hip arthroplasty performed on March 27, 2013

4

in Chicago.

22. The failure to provide informed consent has proximately caused Karla Wessels to undergo additional needless surgery, additional needless painful rehabilitation, additional costs, the loss of employment, and the physical losses occasioned by a second surgery which would otherwise not have been necessary.

23. At all times relevant, Dr. Chapman was the agent or apparent agent of Mercy Medical Center as he was the physician which its emergency department assigned to Karla Wessels' care. Mercy never provided her any option regarding seeing a different orthopedic physician. Confined to an emergency room with a fractured hip, Karla Wessels had no reasonable option available to research orthopedic physicians or potentially differing procedures.

WHEREFORE, for all the foregoing reasons, the Plaintiff Karla Wessels prays that the court enter judgment against Defendants Michael Chapman, M.D. and Mercy Medical Center and in favor of Karla Wessels in an amount in excess of $75,000.00.

By: /s/ Thomas M. Paris
One of Her Attorneys

Larry Helvey
Larry Helvey Law Firm
2735 1st Avenue N.E.
Cedar Rapids, IA 52402
(319) 362-0421

Thomas M. Paris
Attorney and Counselor at Law
55 W. Monroe Street, Suite 3950
Chicago, IL 60603
Phone: 312-759-1600
Fax: 312-201-1436