IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| KARLA WESSELS,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL CHAPMAN, M.D.,<br><br>    Defendant. | No. C14-1016<br><br>RULING ON MOTIONS *IN LIMINE* |

On the 25th day of April 2016, this matter came on for telephonic hearing on the Motion in Limine (docket number 19) filed by Defendant Michael Chapman on April 8, 2016, and the four Motions in Limine (docket numbers 24, 25, 26, and 27) filed by Plaintiff Karla Wessels on April 12, 2016. Plaintiff was represented by her attorneys, Larry D. Helvey and Thomas M. Paris. Defendant was represented by his attorneys, Connie Alt and Dana L. Oxley.

## *DEFENDANT'S MOTION IN LIMINE*

1. **Lay Medical Opinions.** Defendant asks that lay witnesses be prohibited from rendering any medical opinions. Plaintiff has no objection. Neither party will be permitted to elicit medical opinions from lay witnesses.

2. **Out-of-Court Statements by Healthcare Providers.** Defendant asks that Plaintiff be prohibited from offering testimony regarding statements made to her by healthcare providers. Plaintiff argues the testimony is not inadmissible hearsay because it is not being offered for the truth of the matter asserted, "but rather for the affect upon the listener." The Court finds the statements are hearsay, and do not fall within any hearsay exception. Furthermore, the probative value of such statements, if any, is outweighed by their prejudicial effect and, therefore, are inadmissible under FEDERAL

RULE OF EVIDENCE 403. Plaintiff will not be allowed to testify regarding medical opinions apparently expressed to her by healthcare providers.

3. **Other Claims Against Defendant.** Defendant asks that Plaintiff be prohibited from offering any evidence regarding other lawsuits, claims, and patient complications involving Defendant. Plaintiff has no objection. Neither party will be permitted to offer any evidence regarding other claims, lawsuits, or other complications or adverse outcomes involving Defendant.

4. **Liability Insurance.** Defendant asks that Plaintiff be prohibited from referencing liability insurance coverage. Plaintiff has no objection. Plaintiff will not be permitted to offer any evidence regarding liability insurance coverage.

5. **Discovery Disputes.** Defendant asks that Plaintiff be prohibited from offering evidence regarding discovery disputes or procedural matters. Plaintiff has no objection. Neither party will be permitted to offer any evidence regarding discovery disputes or other procedural matters.

6. **Punitive Damages.** Defendant asks that Plaintiff be prohibited from referencing punitive damages or suggesting the jury should "send a message" to Defendant or others. Plaintiff has no objection. Plaintiff is prohibited from referencing punitive damages or suggesting the jury should "send a message" to Defendant or others.

7. **Financial Condition.** Defendant asks that Plaintiff be prohibited from referencing the financial condition of the parties or the size of their law firms, or characterizing herself as "the underdog." Plaintiff has no objection, but asks that Defendant be prohibited from offering evidence that Plaintiff's counsel is from Chicago, or presenting himself as "the underdog." The parties are prohibited from offering evidence regarding Defendant's financial condition or the size of their law firms, and Defendant may not offer evidence that Plaintiff's counsel is from Chicago.

8. **Settlement Discussions.** Defendant asks that no reference be made to any settlement offers or negotiations. Plaintiff has no objection. Both parties are prohibited from making any reference to settlement offers or negotiations.

9. **Collateral Sources.** Defendant asks that Plaintiff be prohibited from offering evidence of any claim for economic damages, including medical bills or loss of income, that was paid or replaced by collateral sources. In this case, there are several potential "collateral sources" to be considered, including medical insurance, short-term disability insurance, long-term disability insurance, social security disability benefits, social security retirement benefits, Plaintiff's pension, and a lump sum payment which Plaintiff received pursuant to an early retirement "buyout."

The common-law collateral source rule provides generally that "benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." *Heine v. Allen Memorial Hosp. Corp.*, 549 N.W.2d 821, 823 (Iowa 1996) (quoting 22 Am. Jur. 2d *Damages* § 566 (1988)). In medical malpractice cases, however, the common-law rule is abrogated by statute.

> [I]n an action for damages for personal injury against a physician and surgeon . . . based on the alleged negligence of the practitioner in the practice of the profession or occupation . . . *the damages awarded shall not include actual economic losses* incurred or to be incurred in the future by the claimant by reason of the personal injury, including but not limited to the cost of reasonable and necessary medical care, rehabilitation services, and custodial care, and the loss of services and loss of earned income, *to the extent that those losses are replaced or are indemnified* by insurance, or by governmental, employment, or service benefit programs or from any other source.

Iowa Code § 147.136(1) (emphasis added). The purpose of the statute is "to reduce the size of malpractice verdicts by barring recovery for the portion of the loss paid for by

3

collateral benefits." *Toomey v. Surgical Services, P.C.*, 558 N.W.2d 166, 168 (Iowa 1997) (quoting *Heine*, 549 N.W.2d at 823). "The legislature intended that such reduction in the size of verdicts would reduce malpractice insurance premiums, helping to assure the public of available and affordable health care." *Id.*

Here, Plaintiff concedes that most of her hospital and medical bills have been paid by collateral sources and, therefore, cannot be recovered by virtue of § 147.136. At the hearing, Plaintiff's counsel advised the Court that Plaintiff will not seek recovery for any medical bills, and will not introduce any evidence regarding the amount of her medical bills.

In addition, it is apparently undisputed that Plaintiff cannot recover for lost wages replaced by short-term disability benefits, long-term disability benefits, or social security disability benefits. It is the Court's understanding that Plaintiff received short-term disability benefits for some period of time, long-term disability benefits for two years, and social security disability benefits for approximately 18 months (until she turned age 66 in July 2014). At the trial, Plaintiff will apparently testify that but for Defendant's negligence, she would have returned to work after her injury and continued to work to age 71. Accordingly, she is seeking lost wages from January 1, 2013 (when she believes she could have returned to work) until her 71st birthday (in July 2019). Plaintiff apparently concedes that her claim for lost wages will be reduced by short-term disability benefits, long-term disability benefits, and social security disability benefits received during that time.

The fighting issue is whether Plaintiff's claim for lost wages will be further reduced by social security retirement benefits received beginning at age 66, pension benefits received following her retirement, and a $40,000 lump-sum payment associated with early retirement. Neither party cited any authority directly on point.

Clearly, social security benefits are received pursuant to a "governmental benefit program" and, pursuant to § 147.136, reduce a plaintiff's damage award "to the extent that

4

[the plaintiff's] losses are replaced or are indemnified" by the benefits. In *Schmidt v. Buffalo General Hosp.*, 183 Misc. 2d 32 (N.Y. Sup. Ct. 1999), a jury awarded the plaintiff past and future lost earnings in a medical malpractice action. The defendants moved to reduce the plaintiff's award by her monthly social security retirement benefits. The trial court refused, drawing a distinction between social security disability benefits and social security retirement benefits.

> As distinguished from social security disability benefits, these payments are not in lieu of an earned wage due to plaintiff's inability to presently work combined with eligibility due to previous work, but rather are received by plaintiff due to her age and eligibility. Whether or not plaintiff is able or unable to work is not a consideration for these payments.

*Schmidt v. Buffalo General Hosp.*, 183 Misc. 2d 32, 35 (N.Y. Sup. Ct. 1999). *Compare Tookes v. Port Authority of N.Y. and N.J.*, 545 Fed. Appx. 27, 30 (2d Cir. 2013) ("Because Tookes' Social Security disability benefits are intended to compensate for lost earnings, they are properly treated as a collateral source."). *See also Bryant v. New York City Health and Hospitals Corp.*, 716 N.E.2d 1084 (N.Y. 1999) (distinguishing between survivors benefits, which are intended to replace the decedent's financial support, and retirement benefits).

Absent any Iowa authority directly on point, I conclude that social security retirement benefits, as distinguished from social security disability benefits, are *not* intended to "replace" or "indemnify" a plaintiff for damages incurred as a result of medical malpractice. Rather, as the Court observed in *Schmidt*, retirement benefits are received by a plaintiff as a consequence of age and eligibility, and are payable at age 66 regardless of whether Plaintiff continued to work. Accordingly, Plaintiff's claim for lost wages in this case will not be reduced by social security retirement benefits received following Plaintiff's 66th birthday.

The facts regarding Plaintiff's entitlement to pension benefits are imprecise. At the hearing, Plaintiff's counsel suggested that, *unlike* social security retirement benefits, Plaintiff would not be entitled to receive pension benefits if she was continuing to work. On the other hand, *like* social security retirement benefits, pension benefits are generally designed to provide an annuity to an employee based on time of service and other eligibility requirements. Generally, they are not intended to "replace" lost income or "indemnify" an employee for her inability to work.

The purpose of the collateral source set-off statute (§ 147.136) in medical malpractice cases is to limit a plaintiff to a single recovery and prevent "double dipping." That is, it can reasonably be argued that Plaintiff should not be permitted to recover lost wages from Defendant up to age 71, and also receive pension benefits which she would not have received during that time if she was still working. If Plaintiff receives lost wages *and* pension benefits, then she is put in a better position than if no negligence occurred. The jury will be instructed that Plaintiff's claim for lost wages, if any, must be reduced by pension benefits during the same time period which she received because she was no longer working.

Finally, the Court must determine whether Plaintiff's claim for lost wages must be reduced by a $40,000 buy-out she received for taking early retirement. The Court was unable to find any authority directly on point. I believe the reasoning, however, is similar to that of a pension benefit. That is, *if* Plaintiff had returned to work following the surgery and continued to work until age 71, then she would not have received a $40,000 buy-out. *If* a jury awarded lost wages from the time Plaintiff would have returned to work until her 71st birthday, then denying Defendant an off-set would allow Plaintiff to double-dip. I believe Iowa Code § 147.136 is intended to avoid that result.

10. **AAOS Guidelines.** Defendant asks that Plaintiff be prohibited from referring to the AAOS Guidelines. Plaintiff has no objection, but notes that footnotes reference certain studies published prior to May 2013, and Plaintiff asserts the prior studies

may be referenced during cross-examination of Defendant's experts. Plaintiff may not refer to the AAOS Guidelines, but may refer to prior published studies if proper foundation is laid.

## PLAINTIFF'S MOTIONS IN LIMINE

1. **Expert Witnesses.** Plaintiff asks that Defendant be limited to one expert witness. The Court concludes that the two expert witnesses identified by Defendant bring different perspectives and expertise to the case and are not unduly cumulative or duplicative. Accordingly, the motion will be denied.

2. **Plaintiff's Alcohol Consumption.** Plaintiff asks that Defendant be prohibited from offering any testimony regarding Plaintiff's alcohol consumption. In the history taken from Plaintiff prior to the surgery, she apparently reported that she "does drink occasionally." A "consultation" report states "occasional alcohol use, she says daily." The report further states, however, that "her sister, Connie Wessels, who works here at Mercy Medical Center, believes that patient probably drinks more than she is reporting."[1] It is unclear to the Court what role, if any, Plaintiff's alleged alcohol consumption played in the decision to perform a hemiarthroplasty. The motion *in limine* will be conditionally granted. If Defendant intends to offer evidence regarding Plaintiff's alleged underreporting of alcohol use, then he must first bring the matter to the attention of the Court outside the presence of the jury.

---

[1] The "history" and "consultation" are contained in Defendant's Exhibit D, which was identified at the final pretrial conference as a "category A" exhibit. The Final Pretrial Order also refers, however, to "Select Medical Records of the Plaintiffs [*sic*] agreed by parties," which apparently does not include a reference to Plaintiff's alcohol consumption. (The Court has yet to receive copies of Plaintiff's exhibits.) Defendant identified Plaintiff's Exhibit 1 as a "category B" exhibit, specifically referring to the issue of alcohol.

3. **Informed Consent Form.** Plaintiff asks the Court to prohibit any evidence regarding an informed consent form signed by Plaintiff.[2] Plaintiff concedes that her signature appears on the informed consent form, although she apparently does not recall signing it. The form refers to "Dr. Wessels" and does not mention Dr. Chapman. Nonetheless, this is an informed consent case and if Plaintiff signed an informed consent form it is relevant to the issue. The motion will be denied.

4. **Collateral Sources.** Plaintiff asks that Defendant be prohibited from offering any evidence regarding a lump-sum received by Plaintiff from her employer when she retired pursuant to a "buyout" plan. This issue was discussed above regarding paragraph 9 of Defendant's motion *in limine*.

## ORDER

IT IS THEREFORE ORDERED that the Motion in Limine (docket number 19) filed by Defendant and the Motions in Limine (docket numbers 24, 25, 26, and 27) filed by Plaintiff are **GRANTED in part** and **DENIED in part**, as set forth above.

DATED this 26th day of April, 2016.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[2] *See* Defendant's Exhibit D at 19.